**UNITED STATES DISTRICT COURT
SOUTHERN DISTRCIT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **CHARLES WADE** | * | **CASE NO.** |
| **206 Clover Leaf Circle** | | |
| **Englewood, Ohio 45322** | * | **JUDGE** |
| | | **Magistrate** |
| **Plaintiff** | * | |
| | | |
| **vs.** | * | |
| | | **COMPLAINT WITH JURY DEMAND** |
| | * | **ENDORSED THEREON** |
| **JOHN W. EVERSOLE, SGT.** | * | |
| **MONTGOMERY COUNTY SHERIFF** | | |
| **345 W. Second St.** | * | |
| **Dayton, Ohio 45422** | | |
| | * | |
| **and** | | |
| | * | |
| **PHIL PLUMMER, SHERIFF** | | |
| **MONTGOMERY COUNTY SHERIFF** | * | |
| **345 W. Second St.** | | |
| **Dayton, Ohio 45422** | * | |
| | | |
| **and** | * | |
| | | |
| **MONTGOMERY COUNTY BOARD** | * | |
| **OF COMMISSIONERS** | | |
| **451 W. Third St.** | * | |
| **Dayton, Ohio 45422** | | |
| | * | |
| **and** | | |
| | * | |
| **SCOTT LANDIS, MAJOR** | | |
| **MONTGOMERY COUNTY SHERIFF** | * | |
| **345 W. Second St.** | | |
| **Dayton, Ohio 45422** | * | |
| | | |
| **and** | * | |

1

**JOSHUA LIGHTNER**           *
**MONTGOMERY COUNTY SHERIFF**
**345 W. Second St.**             *
**Dayton, Ohio 45422**

**and**

**ANY AND ALL OTHER JANE AND/OR** *
**JOHN DOES, whose identities are not yet**
**known but shall be ascertained through**   *
**discovery**
                                      *

     **Defendants**

---

Plaintiff Charles Wade, by and through his attorneys, hereby allege the following as their Complaint:

## JURISDICTION

1. This Honorable Court has jurisdiction over all claims presented herein pursuant to 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 1983 and § 1988, and has pendant jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367.

2. This action arises under the United States Constitution, particularly under the provisions of the Fourth, Sixth, and Fourteenth Amendments to the Constitution of the United States, under Federal law, particularly the Civil Rights Act, Title 42 of the United States Code, §§ 1983 and 1988 and Ohio common law.

## VENUE

3. Venue is appropriate under 28 U.S.C. § 1391(b) and Fed.R.Civ.P. 4 and 17(b), Chapter X, S.D. Ohio Civ. R. 82.1 as all events giving rise to these causes of action occurred within the geographical jurisdiction of this Court.

## PARTIES

4. Plaintiff Charles Wade, at all times relevant to this complaint, is a natural person residing at 206 Clover Leaf Circle, Englewood, Ohio and is a resident of Montgomery County, Ohio.

5. Defendant Montgomery County Board of Commissioners, made up of three duly elected commissioners, is the body elected to govern the affairs of Montgomery County, Ohio pursuant to the Ohio Revised Code and is located within the geographical jurisdiction of this Court.

6.      Defendant Sheriff Phil Plummer is an Ohio law enforcement officer and duly elected Sheriff of Montgomery County.

7.      Sgt. John Eversole is an Ohio law enforcement officer and is an agent and servant of the Montgomery County Sheriff's Office and the Sheriff of Montgomery County.

8.      Josh Lightner is an Ohio law enforcement officer and is an agent and servant of the Montgomery County Sheriff's Office and the Sheriff of Montgomery County.

9.      Major Scott Landis is an Ohio law enforcement officer and is an agent and servant of the Montgomery County Sheriff's Office and the Sheriff of Montgomery County.

10.     Defendant(s) John and/or Jane Doe is (are) persons and entities whose identities shall be determined during discovery whose acts and omissions were willful, negligent, grossly negligent, reckless, and were deliberately indifferent to the health, safety, and welfare of Plaintiff.  This complaint shall be amended pursuant to Federal Rule of Civil Procedure 15 as their identities are discovered.

11.     Each of the individually named defendants is sued individually and in their official capacities, unless otherwise alleged.

12.     Each of the individually named defendants were, at all times relevant, acting under color of state law and on behalf of the Board of County Commissioners of Montgomery County, Ohio, Sheriff Phil Plummer, and/or the State of Ohio.

## FACTS COMMON TO ALL ALLEGATIONS

13.     On October 17, 2016 at approximately 4:30 hours an Ohio State Highway Patrol trooper pulled into the sallyport area of the Montgomery County Jail ("MCJ") with Plaintiff Charles Wade handcuffed behind his back lying face down in the rear seat of the troopers vehicle. The MCJ staff were advised that Plaintiff Wade was intoxicated.

14.     The entire intake process of Charles Wade was captured on the MCJ video surveillance system and also on a hand held video camera.

15.     At all times relevant herein Defendant Eversole was the highest ranking member of the Montgomery County jail staff and was the supervisor of the jail at the time Plaintiff Wade was brought into their custody.

16.     When the MCJ corrections officer and Defendants Eversole and Lighter opened the door of the Ohio State Highway Patrol vehicle Plaintiff Wade asked "I am not going in the chair, am I?"

17.     The Plaintiff's fear of being placed in a restraint chair at the MCJ was based upon the MCJ's well-earned reputation for having a pattern and practice of using excessive force against its pretrial detainees. This includes but is not limited to Amber Swink in 2015

when jail officers used OC spray on her while she was fully restrained in a restraint chair. This also includes Louis Aldini, Jr., a military officer whom officers viciously beat and tazed, and placed in a restraint chair, while he was in their custody in 2006. Jail officers also used excessive force in causing the death of Robert Andrew Richardson Sr. in 2012, whom, when ill in his cell and suffering from a medical emergency, officers allegedly pinned to the ground prone on his stomach and applied significant weight to his back to the point where he ceased breathing. Excessive force was also used against Emily Evans, who was body slammed into a concrete floor while handcuffed knocking her unconscious and causing facial fractures.

18. Plaintiff Wade was subsequently removed from the rear of the patrol vehicle and escorted into the receiving room of the MCJ where he remained in handcuffs.

19. Upon information and belief, Defendant Eversole was aware of Plaintiff's intoxicated state and belligerent attitude, but was also aware that, subdued, handcuffed and in custody, he posed no threat to himself or others around him.

20. Plaintiff Wade struck his head against a blue mat fastened to the wall while being searched by corrections officers.

21. At that point Defendant Eversole ordered that Plaintiff Wade be placed stomach down on the floor and then placed in the restraint chair.

22. Once on the floor, Deputy Walters kept Plaintiff Wade pinned down by placing his right knee on the upper middle back area of Plaintiff Wade at which point Plaintiff Wade stated "I'm not resisting…..how do I not resist?"

23. Plaintiff Wade was subsequently brought to his feet, still handcuffed behind his back, and was escorted to the restraint chair outside of the receiving room.

24. Corrections Officers, including Defendant Lightner, secured Plaintiff's two legs and abdomen into the restraint chair so that he was sitting in the seat and unable to stand, with both of his arms still handcuffed behind his back while Defendant Eversole recorded the events with a handheld camera.

25. At that point Plaintiff Wade's upper torso and head were pushed down into his lap by Defendant Lightner and three other corrections officers where it would have been impossible for the Plaintiff to move or pose any threat to the corrections officers.

26. At that point Defendant Lightner, under the semblance of removing the Plaintiffs handcuffs manipulated the Plaintiff's hand and wrist causing severe pain, injury and evoking a reaction from the Plaintiff which he knew was unnecessary and would lead to further escalation with the Plaintiff in the restraint chair.

27. Defendant Eversole then passes the video camera to another corrections officer and takes a full can of OC spray places it directly in the face of Plaintiff Wade and hits him directly

4

in the eye and face at a range of approximately one inch with a long burst of OC spray while the Plaintiff is still restrained in the restraint chair, pinned forward with his head in his lap by four corrections officer including Defendant Lightner.

28. Only after Defendant Eversole has already sprayed OC spray in Plaintiffs face does he give Plaintiff any verbal commands to "stop resisting."

29. The Plaintiff, after being sprayed directly in the face and eyes with OC spray at point blank range, is now coughing, struggling to breathe and when his left hand is removed from the handcuffs he places his left hand over his mouth as part of a cough reflex. It should also be noted that the corrections officer are also placing their hands/arms over their mouths in a similar cough reflex, even though they were not directly sprayed in the face with OC spray.

30. As Plaintiff Wade is still strapped in the chair, pinned down by four corrections officer including Defendant Lightner, coughing and struggling to breathe Defendant Eversole then administers a second generous dose of OC spray directly to Plaintiffs face and eyes for no reason other than to inflict further pain and injury to the Plaintiff.

31. The four corrections officer and Defendant Eversole then take Plaintiffs arms and strap them into the chair, after which Defendant Eversole takes his forearm and places it across Plaintiffs chest/neck further restricting his ability to breathe despite Plaintiff's cries that he already could not breathe.

32. The corrections officers and Defendants Eversole then further secure Plaintiff Wade with the shoulder straps of the restraint chair and relocate him to cell MHD131 at approximately 0446 hours.

33. Immediately after the chairing and OC spray of Plaintiff Wade, Defendant Eversole threatens to do the exact same thing to another inmate by stating "You're next……You keep it up….you are next."

34. Plaintiff Wade was not released from the restraint chair until 0724 hours, far exceeding any reasonable time, at which time he was placed in housing cell MHD141 and had no further events of any significance while at the MCJ.

35. Defendant Eversole noted in his report that he archived all Divar video surveillance footage and handheld camera footage of the incident which he claims was attached to his report.

36. Both acts of OC spraying the Plaintiff while the Plaintiff was restrained and pinned down by corrections officers in the restraint chair constituted brutal and excessive force, was cruel and unusual and was not a proportionate response to Plaintiff's actions while in the Defendants' custody. Defendants, jointly and severally, exhibited deliberate indifference concerning the amount of force they applied on the Plaintiff.

37. Keeping Plaintiff Wade fully restrained in a restraint chair from 0446 hours until 0724 hours constituted brutal and excessive force, was cruel and unusual and was not a proportionate response to Plaintiff's actions while in the Defendants' custody. Defendants, jointly and severally, exhibited deliberate indifference concerning the amount of force they applied on the Plaintiff.

38. A reasonably competent police officer and/or corrections officer would not consider the use of the amount of force, under these circumstances, reasonable.

39. Defendants were within the course and scope of their employment during all times relevant to Plaintiff's complaint, acting under the direction and orders of their superior officers, and acting pursuant to established policies, procedures, customs, supervision and past practices of the Montgomery County Sheriff's Office, the Sheriff of Montgomery County, and the State of Ohio.

40. As a direct and proximate result of Defendants' actions, Plaintiff has been injured. His injuries are permanent and debilitating. Plaintiff has suffered and continues to suffer from loss of enjoyment of life, humiliation, severe emotional distress, and economic injuries, including loss of income and losses due to medical care he has been required to receive as a result of the injuries.

41. Shortly after the assault of Plaintiff Wade as stated herein, several staff members working in the Montgomery County jail who either witnessed the assault and excessive use of force or had heard about the wrongful conduct of Defendant Eversole and Lightner reported said wrongful conduct to Defendant Landis, who was a supervisor over Defendants Eversole and Lightner, who also had the responsibility of overseeing the operations in the MCJ.

42. Despite knowledge of the wrongful conduct of Defendants Eversole and Lightner Defendant Landis failed to order any type of an investigation into the events that are the subject of this action.

43. As part of his duties, Defendant Landis is responsible for investigating all incidents in which a "use of force" was used in the MCJ and failed in these duties.

44. Counsel for Plaintiff Wade subsequently made a public records request for the reports and video footage of the OC spraying of Plaintiff Wade.

45. At all times relevant herein Defendants, under the direction and control of Defendant Plummer, failed to timely comply with the public records request for the video footage of the OC spraying of Plaintiff Wade in violation of the law and the policy of the Montgomery County Sheriff's Office.

46. Defendants even relabeled videos in document productions to the Plaintiff's attorneys purporting to claim that they were of Plaintiff Wade when they were not, in an effort to frustrate and prevent any claims being brought against the Defendants.

47. The wrongful conduct of Defendants not producing the video was intentional and deliberate since Plaintiff's counsel has sued the Montgomery County Sheriff and its officers/employees in the past and has several cases pending against the Montgomery County Sheriff currently.

48. Upon receiving the public records requests and/or viewing the videotape, Defendants knew or should have known that excessive force was used against Plaintiff Wade, that Defendants Eversole and Lightner had in fact committed the crime of assault against Plaintiff Wade, that Defendant Eversole and Lightner had violated the Use of Force policy of the Montgomery County Sheriff's office and that there was a high probability that there would be litigation regarding this incident in the form of a criminal prosecution of Defendants Eversole and Lightner and/or a civil action brought by Plaintiff Wade and/or internal disciplinary actions against Defendants.

49. Furthermore, Defendants records retention and production policy is in violation with that set forth by the United States Court of Appeals for the Sixth Circuit in the case of *Burgess v. Fisher*, 735 F.3d 462 (2013) and is patently unreasonable since this policy bars the review of the evidence by anyone outside of the Montgomery County Sheriff's Office from a practical standpoint and even limits review within the Montgomery County Sheriff's Office.

## <u>COUNT ONE: DEPRIVATION OF CIVIL RIGHTS</u>
### <u>42 U.S.C. 1983</u>
*All Defendants individually and officially, except Board of County*
*Commissioners only in their official capacities*

50. Plaintiffs reincorporate by reference all preceding paragraphs.

51. Defendants, acting under color of state law and in the course of employment, deprived and/or denied Plaintiff Wades' federal constitutionally and statutorily protected rights.

52. Defendants violated Plaintiffs' rights to: (1) protection against unreasonable search and seizure; (2) due process of the law; (3) security in his person, papers and possessions, and (4) protection from cruel and unusual punishment.

53. As a direct and proximate result of Defendants' actions, Plaintiff has suffered economic and non-economic damages and Defendants are liable to Plaintiff for same.

## <u>*BRANCH ONE*: EXCESSIVE USE OF FORCE</u>
### <u>42 U.S.C. 1983; AMENDMENTS 4, 8, & 14, U.S. CONSTITUTION</u>

54. Plaintiffs reincorporate by reference all preceding paragraphs.

55. As alleged in previous paragraphs, Defendants Eversole and Lightner applied an objectively unreasonable amount of force on Plaintiff while in Defendants custody.

56.     Defendants Eversole, Lightner, Plummer, Landis and Board of County Commissioners are liable for the excessive use of force applied by Defendants under the doctrines of respondeat superior, ratification, estoppel, and/or agent/principal.

57.     Plaintiffs' injuries resulted directly and only from the use of force that was excessive to the need or lack thereof.

58.     The activities of the Defendants, as alleged above, were carried out deliberately, indifferently, grossly, negligently, and willfully and under the alleged authority and color of the laws of the State and County which Defendants represented.

59.     Plaintiff was subjected to, or was caused to be subjected to, use of force that was objectively unreasonable in light of the facts and circumstances presenting Defendants.

60.     Plaintiff was subjected to, or was caused to be subjected to, use of force far in excess of what an ordinary, prudent police/corrections officer would have done under those circumstances. The amount of force used violated Plaintiffs' rights secured by the 4th Amendment to the United States Constitution.

61.     Plaintiff was subjected to, or was caused to be subjected to, use of force by Defendants that shocked the conscience and in fact amounted to torture.

62.     Under the circumstances, the use of OC spray on a person who was already in a restraint chair, completely deprived of the ability to move or protect themselves, was certain or reasonably foreseeable that it would cause pain, injury and possible death, constituting reckless and deadly force.

63.     Defendants lacked any cause whatsoever to believe that Plaintiff posed a significant threat of death or serious physical injury to the officer, others, or himself.

64.     Defendants' use of force constituted a denial of Plaintiffs' rights to be secure from cruel and unusual punishment as secured and guaranteed to him under the 8th and 14th Amendments to the United States Constitution.

65.     Plaintiff further alleges that the use of force to which he was subjected was grossly negligent, reckless, malicious, sadistic, tortious and was carried out with abandoned and depraved hearts.

66.     Defendants' use of force constituted a denial of Plaintiffs' rights to Due Process of the Law as secured and guaranteed to him under the 14th Amendment to the United States Constitution.  There was no need for this particular application of force, there was no relationship between the amount of force inflicted, the extent of the injuries inflicted was severe, permanent, and debilitating, and the amount of force applied was applied maliciously and sadistically for the purpose of doing harm.

67.     As a direct and proximate result of the activities alleged above, the Plaintiff suffered injuries and damages, including pain and suffering, for which the Defendants named are jointly and severally liable.

### *BRANCH TWO*: **POLICIES AND PROCEDURES** **42 U.S.C. 1983**

68.     Plaintiffs reincorporate by reference all preceding paragraphs.

69.     Defendants Eversole, Lightner, Landis and Plummer, as Sheriff of Montgomery County and jail administrator / supervisor, respectively, were and are responsible for establishing and implementing policies, practices and procedures designed to assure that the document and videotape retention and production policy is secure, long enough to be useful to litigant's in Plaintiff's position and is duplicative in such a way that if it is erased off of one system that a copy is still available elsewhere.

70.     Defendants Eversole, Landis and Plummer, as Sheriff of Montgomery County and jail administrator, respectively, were and are responsible for establishing and implementing policies, practices and procedures designed to assure that plaintiff, a detainee at the Montgomery County Jail, would not be subjected to egregious and unwarranted acts of violence as alleged hereinabove.

71.     Defendant Board of County Commissioners, as the duly elected body which sets policies and procedures for Montgomery County, Ohio, is and was responsible for establishing and implementing policies and procedures designed to assure the Constitutionally-proper operation of the MCJ and Montgomery County Sheriff's Office and exercising proper oversight over these same entities.  Proper operation of these entities includes prevention of violent and savage conduct as alleged in this complaint, proper documentation of any use of force and/or wrongful conduct by any law enforcement officer, and a document/videotape retention and production policy that provides for sufficient review of events that is long enough to be useful to supervisors, investigators, inmates and litigants.

72.     Defendants' policies, practices and procedures were not designed to assure that Plaintiff and other victims who were detainees at the MCJ, would be protected from violent and savage conduct as alleged in this complaint.

73.     Defendants' policies, practices and procedures were not designed to assure that Plaintiff, a detainee at the MCJ, would have proper documentation and access to evidence of any use of force utilized by a law enforcement officer(s) against him.

74.     Defendants policies, practices and procedures were not designed to assure that Plaintiff, a detainee at the MCJ, would have proper access to videotape evidence long enough to be useful to litigants in Plaintiff's position.

75.     On information and belief, Defendants application of unconstitutionally excessive force and destruction of evidence was pursuant to policy, procedure, past practice, habit, custom, and/or directives of the Defendant's employers and supervisors. Moreover, upon information, Defendants Eversole, Lightner, Landis, Plummer and other employees of the Montgomery County Sheriff's Office have engaged in a pattern in the past of the use of violent, excessive force in violation of established policies and procedures of which the Defendants' respective employers and have likewise destroyed evidence of same. The employers, including the Board of County Commissioners, had notice but negligently, wantonly, recklessly, and willfully failed to correct. The Board of County Commissioners tolerated a custom of wrongful conduct within the Montgomery County Sheriff's Office that leads to, causes, or results in the deprivation of constitutionally protected rights.

76.     Defendants adopted policies, practice, and procedures that they knew or should have known would be inadequate to prevent Plaintiff's injuries or to retain documentation of the videotapes long enough to be of use to litigants in Plaintiff's position.

77.     Defendants, by and through the position of knowledge, activities and ratification of the person or persons having supervisory responsibility over said case implemented, promulgated, adopted, ratified and acquiesced in the deliberate indifference to the serious needs of the Plaintiff, and those similarly in his position, and willfully, wantonly, recklessly or negligently creating an unlawful and unreasonable risk of injury, use of excessive force and deprivation of his right to documentary and videotape evidence of the wrongful conduct.

78.     On information and belief, Defendants Eversole and Lightner have not been the subject of any disciplinary review for the wrongful treatment, assault and exclusive use of force used on the Plaintiff, showing that the wrongful conduct has been adopted and ratified by Defendants.

79.     On information and belief, Defendants have not been the subject of any disciplinary review for their wrongful conduct, for their failure to produce videotape evidence of the wrongful treatment of Plaintiff. Their conduct has been adopted and ratified by Defendants.

80.     Defendants were acting under color of state law in implementing the described practice, custom, policies, and procedures for the Montgomery County Sheriff's Office and MCJ.

81.     As a direct and proximate result of the consequence of the activities of Defendants and their respective agencies and employers, Plaintiff was deprived of his rights as secured and guaranteed by the 4th, 8th and 14th Amendment of the Constitution of the United States.

82.     As a direct and proximate result of the activities alleged above, Plaintiffs were caused to suffer damages, including pain and suffering, for which said Defendants are liable.

### *BRANCH THREE*: FAILURE TO SUPERVISE & DISCIPLINE
### 42 U.S.C. 1983

83.    Plaintiffs reincorporate by reference all preceding paragraphs.

84.    Defendants, negligently, deliberately, recklessly, failed to properly train, supervise and/or discipline the officer(s) involved in the unlawful and unconstitutional application of force on the Plaintiff and the subsequent denial of documentation and videotape evidence of the wrongful conduct.

85.    The failure to train, supervise and/or discipline was the result of the Defendants' deliberate indifference to the constitutional rights of Plaintiff and the public at large.

86.    As a direct and proximate result of Defendants' failure to properly train, supervise or discipline the officers involved in the attack on Plaintiff, Plaintiff suffered severe physical and emotional injuries.

87.    As a direct and proximate result of Defendants' failure to properly train, supervise or discipline the officers involved in the production of the videotape evidence of the attack on Plaintiff, Plaintiff suffered a disruption of his case and damages.

88.    Specifically, but without limitation, the fact that an OC spray attack on a person restrained in a restraint chair occurred after the Montgomery County Sheriff's Department was sued by Amber Swink and others evinces the fact that the Defendants, Montgomery County Sheriff, the administrator of the Montgomery County Jail, and the Board of County Commissioners is deliberately indifferent to the safety and constitutional rights of detainees.

89.    On information and belief, the Board of County Commissioners, as the body politic responsible for the Sheriff's Office, has failed to conduct or cause to be conducted remedial training, additional supervision and/or discipline to prevent and ameliorate injuries similar to those that were inflicted on Plaintiff.

90.    On information and belief, the Board of County Commissioners, has knowledge of past instances of detainee abuse and has failed to train, supervise, discipline or otherwise respond so as to prevent injuries to members of the public.

91.    The fact that Defendants Eversole and Lightner were not terminated or even disciplined encourages other law enforcement and corrections officers to violate the Constitutional Rights of the Plaintiff and the public at large.

## COUNT TWO: MALICE & GROSS, WANTON, WILLFUL AND RECKLESS WRONGFUL CONDUCT
*All Defendants in their individual capacities, except the Board of County Commissioners*

92. Plaintiffs reincorporate by reference all preceding paragraphs.

93. Defendants owed a duty of reasonable care under the circumstances.

94. The acts and omissions of Defendants, as alleged herein, constitute gross, wanton, willful, and reckless wrongful conduct and actual malice in light of Defendants' actual conscious indifference to the health, safety, legal rights and welfare of Plaintiff.

95. Defendants Sheriff Plummer, Eversole, Lightner, Landis and Board of County Commissioners owed Plaintiff a duty to exercise that level of care in the training, supervision, document/video management, and regulation of their personnel that would have prevented Plaintiffs' injuries and damages as pled herein.

96. Defendants Sheriff Plummer, Eversole, Lightner, Landis and Board of County Commissioners negligently, maliciously, recklessly, and willfully breached that duty and as a direct and proximate result, Plaintiff suffered injuries and damages.

97. Defendants Eversole and Lightner owed Plaintiff a duty of reasonable care under the circumstances and not to act recklessly, intentionally or negligently.

98. Defendants Eversole and Lightner negligently, intentionally, maliciously, recklessly, and willfully breached that duty through their wrongful conduct and as a direct and proximate result, Plaintiff suffered injuries and damages.

99. Through the conduct alleged above, Defendants negligently, intentionally, maliciously, recklessly, and willfully breached this duty by attacking Plaintiff with OC spray and/or destroying the videotape and other documentary evidence so as to inhibit probable litigation and as a direct and proximate result, Plaintiff suffered injuries and damages.

100. As a result of the actual malice and conscious indifference of Defendants, Plaintiffs are entitled to recover, and hereby request, punitive damages in an amount appropriate to punish and deter Defendants from similar acts of misconduct in the future.

## COUNT THREE: ASSAULT
*Defendants Eversole and Lightner in their individual capacities*

101. Plaintiffs reincorporate by reference all preceding paragraphs.

102. Defendants Eversole and Lightner acted with intent to create an imminent apprehension of a harmful or offensive contact with the Plaintiff's person.

103. Defendants Eversole and Lightner actually threatened and administered imminent physical violence and Plaintiff was placed into apprehension of imminent harmful or offensive contact.

104. Immediately preceding intentional physical contact, Plaintiff was placed into apprehension of imminent harmful or offensive contact.

105. As a direct and proximate result of Defendants' actions and inactions, Defendant has suffered and will continue to suffer disabling psychological trauma, loss of enjoyment of life, pecuniary injury, and will continue to suffer same into the future.

## COUNT FOUR: BATTERY
*Defendants Eversole and Lightner in their individual capacities*

106. Plaintiffs reincorporate by reference all preceding paragraphs.

107. Defendants acted with intent to cause Plaintiff serious bodily harm.

108. As alleged above, while in their custody, Defendants Eversole and Lightner inflicted a harmful or offensive contact onto the Plaintiff's person. Specifically, Defendant Lighter manipulated Plaintiff's hand/wrist causing him to react in extreme pain while Defendant Eversole subsequently blasted him in his face twice with OC spray while he was restrained in a restraint chair.

109. Defendants force was excessive by any measure and was without authorization, express or implied.

110. The amount of force used during the OC spraying and restraint chair usage of the otherwise submissive, restrained and unthreatening Plaintiff was harmful and offensive and outside the scope of any privilege or consent.

111. As a direct and proximate result of the actions and inactions of Defendants, Plaintiff has suffered bodily injury, pain and suffering, permanent, disfiguring and disabling injury, loss of enjoyment of life, and will continue to suffer same into the future.

112. As a direct and proximate result of the actions and inactions of Defendants, Plaintiff has suffered pecuniary damages, including, but not limited to, loss of wages, medically-related expenses, and the cost of replacement services and is entitled to those damages which shall punish and deter Defendants from future conduct in conformity with the allegations above.

## COUNT FIVE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*All Defendants in their individual capacities, except the*
*Board of County Commissioners*

13

113.   Plaintiffs reincorporate by reference all preceding paragraphs.

114.   Defendants, jointly and severally, acted in an extreme and outrageous manner passing all reasonable bounds of decency and were excessive, wanton, or gross. Defendants' conduct went beyond all possible bounds of decency and may be regarded as atrocious and utterly intolerable in a civilized community.

115.   The Defendants' actions were the proximate cause of Plaintiffs' severe psychological and physical injuries.

116.   The Plaintiff's mental anguish was serious and of a nature that no reasonable person could be expected to endure.

### COUNT SIX: CONSPIRACY TO FALSIFY AND/OR OMIT REQUIRED REPORTS AND CONSPIRACY TO DESTROY VIDEOTAPE EVIDENCE
*All Defendants in their individual capacities, except the*
*Board of County Commissioners*

117.   Plaintiffs reincorporate by reference all preceding paragraphs.

118.   At some point after Defendants severely injured the Plaintiff, Defendants, allied as an association that numbered more than two (2).

119.   On or after October 17, 2016, Defendants associated with one another with an unlawful objective, namely, the falsification, omission and destruction of official reports and videotape evidence chronicling the assault, battery and detention of Plaintiff in the Montgomery County Jail.

120.   As part of that unlawful association, Defendants formed an agreement, understanding, or "meeting of the minds" regarding the objective and the means of pursuing it.

121.   As a direct and proximate result of Defendants' association and the carrying out of their unlawful objective, Plaintiffs have suffered physical and other damages and their recovery for same remains frustrated.

### COUNT SEVEN: SPOLIATION OF EVIDENCE / INTERFERENCE WITH RIGHT TO REMEDY
*All Defendants in their individual capacities, except the*
*Board of County Commissioners*

122.   Plaintiffs reincorporate by reference all preceding paragraphs.

123.   Defendants intended through their conduct as pleaded herein, or knew or should have known that their conduct as pleaded herein, would result in the destruction, concealment or spoliation of evidence favorable to Plaintiff.

14

124.   Defendants were aware, at the time of the conduct pleaded herein, or should have been aware, of the likelihood of litigation between Plaintiff and Defendants.

125.   Defendants' willful conduct, as pleaded herein, resulted in the destruction, concealment or spoliation of evidence favorable to the Plaintiff, in the form of documents, videos, recordings, testimony, and other evidence.

126.   Defendants' conduct, as pleaded herein, was designed to disrupt or destroy Plaintiff's future civil action for damages, forcing Plaintiffs to expend and incur further fees, costs, and other damages for recovery of damages stemming from the brutal attack of the Plaintiff.

127.   Defendants' conduct which resulted in the destruction or spoliation of evidence favorable to Plaintiff was undertaken willfully, wantonly, recklessly, and or with a substantial disregard for the rights of Plaintiff and the general public and was substantially certain to result in harm to Plaintiff and others seeking remedy against the Defendants for their wrongful conduct.

128.   Plaintiffs are entitled to recover compensatory and punitive damages as a result of Defendants actions and omissions.

   **WHEREFORE,** Plaintiffs respectfully demands judgment against the Defendants, jointly and severally, for compensatory, punitive and other damages in amounts to be determined at trial, as well as the costs of this action to include reasonable attorney fees, prejudgment interest, post-judgment interest and to such other and further relief to which Plaintiffs may be deemed entitled.

   Respectfully submitted,


   /s/ Douglas D. Brannon
   Douglas D. Brannon (0076603)
   Attorney for Plaintiff
   BRANNON & ASSOCIATES
   130 W. Second St.     Suite 900
   Dayton, OH   45402
   Telephone:    (937) 228-2306
   Facsimile:    (937) 228-8475
   E-Mail:       dbrannon@branlaw.com

## **JURY DEMAND**

Plaintiff Charles Wade, by and through his attorneys, hereby respectfully demand trial by jury as to their claims pursuant to Federal Rule of Civil Procedure 38, et seq., and Southern District Local Rule 38.1.


/s/ Douglas D. Brannon
Douglas D. Brannon